UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SAVANNAH PARTIPILO,

     Plaintiff,

v.                                                         Case No. 3:17cv549-MCR-CJK

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

     Defendant.

_____/

<u>REPORT AND RECOMMENDATION</u>

     This case is before the court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of Social Security ("Commissioner") denying Savannah Partipilo's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34. The case was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) and N.D. Fla. Loc. R. 72.2(D). Upon review of the record before the court, I conclude the Administrative Law Judge ("ALJ") failed to conduct a legally-sufficient analysis of Listing 1.04A. The decision of the Commissioner, therefore, should be remanded for further proceedings consistent with this Report and Recommendation.

## ISSUES ON REVIEW

Ms. Partipilo, who will be referred to as claimant, plaintiff, or by name, asserts the ALJ erred by: (1) failing to conduct a meaningful analysis of Listing 1.04A and find plaintiff met that Listing due to her spinal impairments; and (2) failing to order a consultative examination of plaintiff's physical condition.  (Doc. 14).

## PROCEDURAL HISTORY

On October 12, 2013, plaintiff filed an application for DIB, claiming disability beginning July 1, 2008, due to a dural thoracic arachnoid cyst, scoliosis in the thoracic and lumbar spine, acute renal failure, neuropathy, spinal stenosis, bipolar disorder, attention deficit disorder ("ADD"), depression, degenerative disc disease, and osteoarthritis.  T. 85-86.[1]  The Commissioner denied the application initially and on reconsideration.  T. 94, 115.  After a hearing on April 13, 2016, the ALJ found claimant not disabled under the Act.  T. 18-31, 37-66.  The Appeals Council denied a request for further review and, as a result, the ALJ's decision became the final determination of the Commissioner.  T. 1-3.  The Commissioner's determination is now before the court for review.

---

[1] The administrative record filed by the Commissioner consists of 26 volumes (docs. 10-2 through 10-27) and has 1679 consecutively-numbered pages.  References to the record will be by "T.," for transcript, followed by the page number.

Case No. 3:17cv549-MCR-CJK

## STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). "Even if the evidence preponderates against the [Commissioner], [the court] must affirm if the decision is supported by substantial evidence." *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In

determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (*citing Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)).  The reviewing court, however, may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273, 1273 (11th Cir. 1985).

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability, the physical or mental impairment must be so severe the plaintiff is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)(4), the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, she is not disabled.

2.      If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.      If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least 12 months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent her from performing her past relevant work, she is not disabled.[2]

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other jobs exist in significant numbers in the national economy that accommodate the claimant's residual functional capacity ("RFC") and vocational factors, she is not disabled.

## FINDINGS OF THE ALJ

In her written decision, the ALJ made several findings relative to the issues raised in this appeal:

---

[2] "[C]laimant bears the initial burden of establishing a severe impairment that keeps [her] from performing [her] past work."  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

• Through the date last insured ("DLI"), claimant had the following severe impairments: degenerative disc disease, history of thoracic arachnoid cyst status post-surgical removal, scoliosis, degenerative joint disease, history of adrenal insufficiency, affective disorder, anxiety disorder, and ADD. T. 20.

• Through the DLI, claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 21.

• Through the DLI, claimant had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except claimant cannot perform work around heights or hazards; claimant must avoid concentrated exposure to extreme cold and extreme heat, vibration, and pulmonary irritants; and claimant is limited to simple, routine, repetitive tasks; simple work-related decisions; occasional interaction with supervisors, coworkers, and the public; and occasional change in a routine work setting. T. 23.

• Through the DLI, considering claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that claimant could have performed. T. 30.

• Claimant was not under a disability, as defined in the Act, at any time from July 1, 2008, the alleged onset date, through December 31, 2015, the DLI. T. 31.

## FACT BACKGROUND AND MEDICAL HISTORY

Ms. Partipilo testified regarding her health, daily activities, and work history at the April 2016 hearing before the ALJ. T. 37-66. Born on June 1, 1969, she graduated high school and took some college classes. T. 41-42. She previously worked as a bartender, sales clerk, model, entertainer, and athlete. T. 62.

According to her hearing testimony, Ms. Partipilo suffers from scoliosis and sciatica that causes pain in her right leg. T. 52. Although "[i]t's not as bad as it used to be," she also has "shooting electrical pains across the back periodically." T. 53. On a good day, plaintiff can stand or walk for 1.5 to 2 hours before needing to rest, and sit for 1.5 to 2 hours before needing to change positions. T. 53-54. In addition, she can prepare food and complete arts and crafts with her 4-year-old daughter. T. 54-55. She has about 7 or 8 good days a month. T. 57. On bad days, she spends most of the time in bed or a recliner. T. 57-58.

She takes Xanax for anxiety and panic attacks, Adderall for ADD, tizanidine for muscle spasms and pain, and Ambien to help her sleep. T. 47. She also uses a TENS unit to relieve back pain. T. 49. In October 2015 and January 2016, she tried to work part-time as a boxer and wrestler, but it aggravated her sciatica and she had to take prednisone and receive injections. T. 43, 46. She also drove to California to visit her father; along the way, she worked as a boxer and wrestler, and stayed at a

few friends' houses.  T. 43.  Her exertions, however, caused the trip to take "a lot longer . . . due to the injuries and stuff."  T. 43.

Medical records show Ms. Partipilo sought treatment for back pain over several years.  At an outpatient rehabilitation clinic in 2010, she reported an aching, stiff, burning, throbbing, radiating pain.  T. 932.  On May 27, 2010, Todd Burke, a physical therapist, noted moderate muscle spasm in the thoracic and lumbar paraspinal muscles with tenderness to palpation.  T. 932.  Burke's examination also revealed decreased trunk strength and range of motion, difficulty performing standing or supine pelvic tilts, and a positive straight-leg-raise test bilaterally for leg pain at 60 to 70 degrees.  T. 932-34.

An August 26, 2010, MRI of the thoracic spine displayed right thoracic scoliosis, a posterior central disc herniation at the T4-5 level with narrowing of the thoracic cord, and mild degenerative posterior disc bulges at T5-6 and T7-8.  T. 407.  A September 15, 2010, MRI of the lumbar spine exhibited mild left lumbar scoliosis and a small focal posterior degenerative disc bulge at L5-S1.  T. 408.  X-rays of the lumbar spine taken on April 6, 2011, showed: (1) mild curvature of the thoracolumbar spine convex to the left; (2) anterior marginal spurs at the superior endplate of L2, L3, and L4, and to a lesser extent L5; and (3) sclerosis of the facets at the L5-S1 level suggestive of facet arthropathy.  T. 854.

A second lumbar spine MRI from September 11, 2012, revealed mild multilevel degenerative disc disease and facet joint arthropathy, and a small central disc protrusion and annular tear at the L5-S1 level. T. 388. The disc protrusion abutted the S1 nerve roots but without evidence of impingement. T. 388.

On April 10, 2013, Janis Fuqua, N.P., began providing pain management. T. 1060. Ms. Partipilo reported mid and low back pain that radiated into the buttocks; she indicated the pain had worsened over the years and it prevented her from performing chores, walking, and exercising. T. 1060. N.P. Fuqua observed an antalgic gait, and examination revealed tenderness on palpation at L3 through L5, as well as increased pain with flexion. T. 1062-63. On June 18, 2013, MRIs of plaintiff's spine showed thoracic spinal cord herniation, but no significant canal or foraminal encroachment. T. 1004.

Plaintiff continued to complain of back pain to N.P. Fuqua in August 2013. T. 1034. A CT scan of the thoracic spine from the same month showed moderate right convex scoliosis, moderate multilevel spondylosis, and mild/moderate multilevel degenerative disc disease. T. 1158. The scan also showed a dorsal arachnoid cyst at the T4-5 level which caused moderate compression of the dorsal thoracic cord. T. 1159. On September 5, 2013, Dr. Douglas Matthews performed a T4-5 laminectomy and removed the cyst. T. 1145-46.

Matthew Dougherty, D.O., examined Ms. Partipilo on October 30, 2013.  T. 319-21.  She reported worsening "stabbing, piercing[,] and shooting" back pain.  T. 319.  Dr. Dougherty's physical examination of the spine revealed a decreased range of motion, painful movement, restricted and painful flexion and extension, and paraspinous muscle spasm with tenderness over the lumbar vertebra.  T. 321.  At Dr. Dougherty's request, an MRI of claimant's lumbar spine was taken on December 12, 2013.  T. 1178.  The interpreting radiologist concluded the MRI showed degenerative disc changes at L5-S1 with disc desiccation and a posterior central disc bulge with a radial tear of the annulus fibrosus at the bulge.  T. 1178.

Plaintiff returned to N.P. Fuqua on January 6, 2014, with complaints of low back pain with radicular symptoms.  T. 1420.  N.P. Fuqua's examination showed tenderness on palpation of the lumbar paraspinal region bilaterally, lumbar spine pain increased with extension, and tenderness on palpation at L4 and L5.  T. 1422.  The examination also revealed decreased sensation to light touch at L5 and S1 dermatome levels bilaterally, as well as lower extremity weakness.  T. 1422.

Similarly, an examination by Dr. Dougherty on January 15, 2014, showed a reduced range of motion in the spine, restricted and painful flexion and extension, paraspinous muscle spasm, and tenderness over the lumbar vertebra.  T. 300.  Dr. Dougherty also noted paresthesia at right and left L3, right L5, right S1, left S2, and left S3.  T. 300.

On April 14, 2014, plaintiff presented to Nurse Gamini Wiyathunge with moderate numbness and tingling in her right arm and hands. T. 1279. Nurse Wiyathunge reported paresthesia at right and left L3, right L5, right S1, left S2, and left S3. T. 1280. The nurse also observed a reduced range of motion in the spine, paraspinous muscle spasm, and tenderness over the lumbar vertebra. T. 1280.

On May 14, 2014, claimant visited Bradley Hill, D.O., with a complaint of low back pain. T. 1403. A physical examination performed by Dr. Hill showed tenderness on palpation of the lumbar paraspinal region bilaterally, increased lumbar spine pain with extension, and a positive straight-leg-raise test of the right leg. T. 1405. In addition, Dr. Hill noted a decreased sensation to light touch at the L4 and L5 dermatome levels bilaterally. T. 1405. Plaintiff returned to Dr. Hill on July 2, 2014, after receiving a medical branch nerve block on May 22 and June 5. T. 1391. Although claimant still reported pain, the nerve block provided more than a 50 percent reduction in pain for over a month. T. 1391. Dr. Hill's physical examination revealed tenderness on palpation of the lumbar paraspinal region bilaterally, and positive straight-leg-raise tests bilaterally. T. 1393. Diagnostic imaging of plaintiff's cervical spine taken on December 31, 2014, showed degenerative arthritis with hypertrophic changes (most marked at the C3-C5 interspaces), cervicothoracic curve, degenerative arthritis in the upper thoracic spine, anterior wedging in the T4

vertebral body, and advanced degenerative arthritis in the upper thoracic facet joints. T. 1520.

On November 4, 2015, Ms. Partipilo visited Chris Pappas, M.D., with complaints of right-sided low back pain, sciatica, and loss of bowel and bladder control. T. 1564. Dr. Pappas noted tenderness on palpation of the right sacroiliac joint, and asymmetry and weakness in the right leg. T. 1567. Dr. Pappas also observed a positive straight-leg-raise test on the right with sciatica to the knee. T. 1567. A November 6, 2015, MRI of the lumbar spine revealed a "3 mm left neural foraminal cyst at L3-4 which may impinge on the nerve root." T. 1599. The MRI also showed degenerative facet changes at L2-3, L3-4, and L4-5, but no significant disc disease. T. 1599.

Dale Landry, Jr., M.D., examined plaintiff on December 16, 2015. T. 1612. Plaintiff reported low back pain and right leg pain. T. 1613. Dr. Landry's examination revealed a limited range of motion in the lumbar spine. T. 1614. After reviewing the November 2015 MRI, Dr. Landry concluded at L5-S1 "there is significant broad-based disc bulge with disc desiccation with central disc herniation with some compression of the right L5 and S1 nerve roots with mild central stenosis, moderate right greater than left lateral recess stenosis and mild right neuroforaminal stenosis[.]" T. 1614.

<u>ANALYSIS</u>

<u>Listing 1.04A</u>

Ms. Partipilo first argues the ALJ erred by failing to conduct a meaningful analysis of Listing 1.04, and by failing to find she met Listing 1.04A due to her lumbar spine impairments. "The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (*citing* 20 C.F.R. § 404.1525(a)). "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Id.* (*citing* 20 C.F.R. § 404.1525(a)-(d)); *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson*, 284 F.3d at 1224 (*citing* 20 C.F.R. § 404.1526(a)).

Listing 1.04 includes "[d]isorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root

(including the cauda equina) or the spinal cord." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.04. To meet Listing 1.04A, a claimant must present "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]" *Id.* at § 1.04A.

Here, at step three of the disability evaluation, the ALJ concluded "claimant's condition does not satisfy the severity requirements of" Listing 1.04 and noted "[n]o treating or examining physician has indicated findings that would meet or equal[] the" Listing. T. 21. The ALJ's step-three analysis, however, is flawed for several reasons.

First, the ALJ stated categorically "[t]he medical records do not show that the claimant's impairment has led to an neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and a positive straight-leg raising test[.]" T. 21. When evaluating the RFC, however, the ALJ recognized "claimant demonstrated decreased range of motion" in the spine.[3] T. 24. Likewise, the record contains some evidence of a neuro-anatomic distribution of pain, T. 1420-22, 1567, 1668, motor loss accompanied by sensory or reflex loss,

---

[3] The medical records cited confirm the ALJ was referring to a decreased range of motion in the spine. T. 297, 306, 317, 321, 326, 343, 346.

T. 1063, 1085, 1422, 1567, and positive straight leg raise tests, T. 932, 1393, 1405, 1567, 1669. Thus, the ALJ's cursory step-three analysis overlooked medical evidence relevant to evaluating Listing 1.04A. *See Groberg v. Astrue*, 415 F. App'x 65, 72 (10th Cir. 2011) ("[T]he ALJ did not discuss the specific medical evidence that caused him to reach the conclusion that Listing 1.04A was not satisfied. Such a discussion may not be essential in a situation where the ALJ relied on the *lack* of evidence to reach his conclusion (as here), and *there is in fact no evidence.* But where as here there *is* evidence that may meet the listing requirements, the ALJ is required to provide a proper analysis. Otherwise, it is impossible to know how the ALJ weighed the evidence.") (citations omitted) (emphasis in original).

Attempting to bolster the ALJ's analysis, the Commissioner argues the ALJ "properly found that while Plaintiff had some abnormal findings, she only had 'intermittent findings of spinal limitation of motion[.]'" (Doc. 15, p. 2). Similarly, the Commissioner asserts that "[w]hile on occasion Plaintiff had right leg weakness, Plaintiff generally exhibited a normal gait and ability to ambulate without assistance devices." (*Id.*). The Social Security Administration's regulations, however, acknowledge the findings necessary to satisfy a Listing may be intermittent, so long as they appear over a period of time. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00D ("Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and

evaluation."); *id.* at § 1.00H1 ("Musculoskeletal impairments frequently improve with time or respond to treatment. Therefore, a longitudinal clinical record is generally important for the assessment of severity and expected duration of an impairment unless the claim can be decided favorably on the basis of the current evidence.").

As indicated above, the ALJ incorrectly made the blanket assertion that "[t]he medical records do not show that the claimant's impairment has led to an neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and a positive straight-leg raising test[.]" T. 21. Consequently, the ALJ did did not address whether the frequency and timing of the abnormal physical findings in the record are sufficient to satisfy Listing 1.04A and the durational requirement. The ALJ, therefore, did not provide an explanation of this issue that is susceptible to judicial review.

The Commissioner also repeatedly claims plaintiff did not meet Listing 1.04A because she failed to present evidence of nerve root compromise. (Doc. 15, p. 2, 12, 14-15). The ALJ, however, never stated claimant failed to present evidence of nerve root compromise; the ALJ acknowledged the November 2015 MRI of claimant's lumbar spine "revealed a foraminal cyst that might impinge on the nerve root as well as degenerative facet disease." T. 27, 1599. And when Dr. Landry reviewed the same MRI, he concluded at "L5-S1, there is significant broad-based disc bulge with

disc desiccation with central disc herniation with some compression of the right L5 and S1 nerve roots with mild central stenosis, moderate right greater than left lateral recess stenosis and mild right neuroforaminal stenosis and no left neuroforaminal stenosis."  T. 1614.  In addition, the record contains diagnoses of lumbar radiculopathy, T. 1422, 1669, which can be evidence of nerve root compression.  *See Israel v. Colvin*, 840 F.3d 432, 434 n.5 (7th Cir. 2016) ("Radiculopathy is a condition caused by compression, inflammation and/or injury to a spinal nerve root.") (citation omitted).  Accordingly, the record does contain evidence of nerve root compromise.

Next, the Commissioner asserts Ms. Partipilo's activities of daily living are inconsistent with a Listing-level impairment.  Regulations governing the Listings indicate that "[c]are must be taken to ascertain that the reported [physical] examination findings are consistent with the individual's daily activities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00D.  At step three, however, the ALJ did not explain how claimant's daily activities negate the examination findings needed to satisfy the criteria of Listing 1.04A.

The Commissioner also argues the ALJ's decision is supported by the state agency expert opinion, which the ALJ assigned partial weight.  In October 2014, John Mather, M.D., reviewed plaintiff's medical records and concluded she did not have impairments severe enough to meet or equal Listing 1.04.  T. 109-13.  Dr. Mather, however, offered his opinion over a year before the DLI, and he did not

review the November 2015 MRI, which showed possible nerve root compression. The state agency expert opinion, therefore, does not provide convincing support for the ALJ's conclusory step-three analysis.

Finally, the Commissioner claims Ms. Partipilo does not meet Listing 1.04A because she did not demonstrate she had positive straight-leg-raise tests in *both* the sitting and supine positions.[4]  Plaintiff identified multiple positive straight-leg-raise tests, but the record does not reflect whether the tests were conducted while claimant was sitting, standing, or in both positions.  T. 932, 1393, 1405, 1567, 1669.  Although the burden is on plaintiff to show she meets the Listing, "if the ALJ was presented with insufficient information to determine whether a straight leg raise test was performed in both the sitting and supine positions, the ALJ was required to 'try to resolve the . . . insufficiency by' recontacting a medical source, requesting additional existing evidence, requesting that plaintiff undergo a consultative examination, or asking plaintiff for more information."  *Stokes v. Berryhill*, 294 F. Supp. 3d 460, 465 (E.D.N.C. 2018) (*quoting* 20 C.F.R. § 404.1520b(b)(2)); *see also Vesy v. Astrue*, 353 F. App'x 219, 224 (11th Cir. 2009) ("In general, the ALJ should re-contact a medical

---

[4] In the same section of her brief, the Commissioner says, "although Plaintiff points to evidence of weakness, . . . there is no evidence of atrophy of any muscle."  (Doc. 15, p. 15).  Listing 1.04A, however, does not require evidence of muscle atrophy.  Instead, the Listing indicates motor loss can be shown by atrophy with associated muscle weakness *or* muscle weakness.

source when the evidence received from that source is inadequate to determine whether the claimant is disabled.").

In sum, the ALJ conducted an abbreviated analysis of whether Ms. Partipilo met Listing 1.04A and overlooked evidence relevant to the Listing. This case, therefore, should be remanded for the ALJ to set out the specific findings and reasons for determining whether plaintiff is disabled at step three. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) ("[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' we will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'") (*quoting Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)); *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) (reversing because ALJ's Listing evaluation was "devoid of any analysis that would enable meaningful judicial review"); *Stokes*, 294 F. Supp. 3d at 466 ("[T]he case must be remanded because, in evaluating whether plaintiff was disabled pursuant to Listing 1.04A, the ALJ failed to consider pertinent evidence of plaintiff's spinal condition and failed to explain on the record any reasons why such evidence was discounted or ignored[.]"). Although concluding that remand is warranted, the undersigned expresses no opinion as to the merits of the applications for benefits.

Duty to Develop the Record

Ms. Partipilo also argues the ALJ erred by failing to request a consultative examination of her physical impairments and by relying on the nonexamining medical source to formulate the RFC. (Doc. 14, p. 18-22). "[T]he ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that [she] is disabled, and, consequently, [she] is responsible for producing evidence in support of [her] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citations omitted). "[T]here must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (*citing Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995)).

Claimant says the ALJ was required to order a consultative examination due to the lack of opinions from treating or examining sources regarding claimant's functional limitations. Under the Social Security regulations, the ALJ may order a consultative examination if the medical evidence submitted by the claimant does not provide enough information about an impairment to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1517. The ALJ, however, "is not required to order a consultative examination as long as the record contains sufficient evidence for the

administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (citation omitted).

Plaintiff has not shown the ALJ committed reversible error by failing to order a consultative physical examination. The 1679-page administrative record contains a significant amount of evidence related to claimant's physical condition, including her testimony, diagnostic imaging, treatment notes, and results of physical examinations. And at the April 2016 hearing, plaintiff's representative did not object to the evidence or indicate additional evidence needed to be submitted to the ALJ.[5] T. 39.

Nevertheless, the only opinion from a physician regarding plaintiff's physical limitations came from Dr. Mather, the nonexamining state agency expert. The ALJ assigned Dr. Mather's opinion partial weight. T. 28. Dr. Mather completed his opinion in October 2014, which was over a year before the DLI and before the November 2015 MRI, which showed possible nerve root compromise. The ALJ rejected Dr. Mather's conclusion that claimant could only stand and/or walk for 2 hours in an 8-hour workday, finding the conclusion "unsupported by the medical record, including objective findings from examining physicians and diagnostic

---

[5] The Commissioner correctly notes that ordering a consultative examination after the DLI may have reduced relevance. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she [was] insured.") (*citing* 42 U.S.C. § 423(a)(1)(A)).

work-up." T. 28, 111. Instead, the ALJ found plaintiff could perform light work, which "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10.

Thus, the ALJ apparently rejected Dr. Mather's standing and walking limitations based on her own interpretation of the objective findings. In a case such as this, where plaintiff asserts she is disabled due to a complicated spinal impairment, the ALJ should have had a physician review the entire record (including the November 2015 MRI) and offer an opinion as to claimant's functional limitations. *Cf. Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996) ("With a few exceptions (not relevant here), an ALJ, as a lay person, is not qualified to interpret raw data in a medical record. Of course, where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment.") (internal citations omitted). On remand, therefore, the ALJ should have a physician review the administrative record and offer an opinion as to Ms. Partipilo's limitations.

Accordingly, it is respectfully RECOMMENDED:

1.     That the Commissioner's decision be set aside and the matter REMANDED for further proceedings consistent with this Report and Recommendation.

2.      That the clerk be directed to enter judgment in favor of plaintiff and close the file.

At Pensacola, Florida, this 13th day of August, 2018.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.